Dwight D. **RHODES**, Robert B. Rhodes, June L. Bency, Howard I. Rhodes, and Thomas H. Rhodes, Plaintiffs-Appellants,

v.

Donald B. **NICKLAS** and Sherie D. Nicklas, Defendants-Respondents.

No. WD 31996.

Missouri Court of Appeals, Western District.

Nov. 3, 1981.

Joe D. Holt, Holt, Krumm, Hamilton, Mays & Shryock, Fulton, for plaintiffs-appellants.

James W. Gallaher, Bushmann, Neff & Gallaher, Jefferson City, for defendants-respondents.

Before TURNAGE, P. J., and PRITCHARD and CLARK, JJ.

TURNAGE, Presiding Judge.

Dwight Rhodes and others brought this suit to enjoin the Nicklases from interfering with a cemetery located on land purchased by the Nicklases. The court entered judgment in favor of the Nicklases and Rhodes appeals.

The contentions concern whether or not the cemetery was properly established as a private cemetery. Reversed and remanded.

There is little, if any, dispute as to the facts. In 1878, Fanny Frazier conveyed the northwest quarter of the southwest quarter, one acre reserved for graveyard, in Section 26, Township 45, Range 11, in Callaway County. The abstract of title shows that John Wallace became the owner of the 40 acres in 1840 and died in 1873. It is conceded that about 25 persons were buried in a small cemetery located on the land out of which the one acre was reserved, with burials having commenced prior to 1878 and concluding between 1933 and 1935. All but two of the 25 persons buried in the cemetery were related, although some remotely, to the John Wallace family. It is further conceded that the Rhodes who brought this suit are relatives of the Wallace family members buried in the cemetery.

The petition alleged the existence of the cemetery and the reservation of the one acre for cemetery purposes beginning with the conveyance from Fanny Frazier to James Tharp. The same reservation for cemetery was contained in the deed by which the Nicklases obtained title to the tract.

Donald Nicklas testified and admitted that he was informed of the existence of the cemetery before he purchased the tract

containing the cemetery. Nicklas stated that he went on the land and could see the outline of the cemetery by fencing which had fallen into disrepair, but which was still visible to give the outline of the area used for burial purposes. He also stated some headstones marking graves were visible within the fenced area. Nicklas stated that he completed the purchase with full knowledge of the reservation in the deed and the visibility of the cemetery on the ground. The petition alleged, and Nicklas agreed, that he had torn part of the old fence out and had excavated and poured the foundation for a home on a part of the area which had been fenced for the cemetery. He denied that he had actually excavated any graves and the evidence did not show otherwise. He did state that trucks and equipment had been driven over grave sites in the construction process of his house. There was also evidence that some of the headstones had been removed from their original position and placed elsewhere. The petition sought an injunction to enjoin Nicklas from interfering with the cemetery; for damages for interference already committed; for declaratory judgment declaring the rights of the parties in the cemetery; for an order that the cemetery be surveyed and for access rights from the public road to the cemetery.

The court entered findings of fact and conclusions of law and held that the cemetery was a private family cemetery, but because it had not been established by a deed to the county court pursuant to § 214.090, RSMo 1978, no relief could be granted.

The trial court obviously relied upon *Wooldridge v. Smith*, 243 Mo. 190, 147 S.W. 1019 (1912), in which the court held that a private cemetery which had not been established pursuant to statute could not be protected from the acts of the owner of the surrounding ground. At page 1022 of 147 S.W., the court specifically stated that it was not presented with the question of whether or not a private cemetery could be established by reservation in a deed and reserved decision on that question. In this case the cemetery was reserved by deeds,

including the deed by which Nicklas obtained title and thus the question left undecided in *Wooldridge* is now presented. No Missouri case has been located in which this question has been decided. However, two cases in Texas have considered the question on almost identical facts with those presented here. In *Houston Oil Co. v. Williams*, 57 S.W.2d 380 (Tex.Civ.App.1933) and *White v. Williams*, 57 S.W.2d 385 (Tex.Civ.App.1933) a reservation appeared in the deeds to the surrounding property of one acre "known as the McCutcheon Graveyard." In *Houston Oil* the court first considered the argument that the reservation or exception for the cemetery was void because of the uncertainty as to its description. The conveyance was of a 220-acre tract "save and except about one-half acre of land in the south end of this tract known as the McCutcheon Graveyard." The court held that the clause referred to property "in terms sufficiently explicit to enable it to be identified, and the exception may not be considered void for uncertainty." 57 S.W.2d 383. The court held that the description reasonably described the cemetery and with the aid of extrinsic evidence the boundaries of the cemetery could be ascertained with certainty. The court stated that the cemetery had been fenced by wire fencing and was clearly visible on the ground. All of the parties recognized the particular fenced plot as that which was segregated and which constituted the McCutcheon Graveyard. The court further noted that the graves located within the boundaries marked by the fence did not take up that entire area and found that the fenced area did not cover an entire half acre. The court held that the quantity called for in the description did not control where there are other features in the description which would plainly show the intent to describe the particular tract of land rather than the particular quantity. The court held that the area which had been fenced and segregated from the remaining land was the tract actually excepted by the deeds and would be the tract embraced within the exception.

In this case Nicklas argues that the reservation for the cemetery is void because it is not described and argues that the area fenced actually contains less than one-half acre. This court finds *Houston Oil* to be persuasive and holds that because the area in this case used for the cemetery was fenced and visible on the ground, and because Nicklas saw and identified the precise area which was fenced and used for cemetery purposes before he purchased the tract, that the exception in the deed is not void for want of a definite and certain description of the cemetery area. The description of the plot may be readily ascertained by the fence line and it is that tract which shall constitute the cemetery even though the entire area is not filled with graves. It is that area which was segregated from the remaining land and devoted to cemetery purposes.

In *Houston Oil* the court next considered the question of whether or not Houston Oil should be enjoined from drilling within the fenced area constituting the cemetery. The court stated the tract had long been dedicated or set aside and actually used exclusively as a private burial ground. The court held the words in the deed of "save" and "except" reflected the intention of the grantor to exclude from the deed the graveyard. The court held the title to the entire tract on which the cemetery was located passed subject to and burdened with the use and purposes of the family burial ground. The court stated:

"[I]t appears to be the rule that, where property has been actually appropriated either as a private family burying ground or as a public cemetery, it cannot in either instance be inherited or conveyed as other property is done so as to interfere with the use and purposes to which it has been devoted." 57 S.W.2d 384[8–14]

The court further quoted from *Hines v. State*, 126 Tenn. 1, 149 S.W. 1058, 1059[2] (1911):

" 'When once dedicated to burial purposes, and interments have there been made, the then owner holds the title to some extent in trust for the benefit of those entitled to burial in it, and the heir at law, devisee or vendee takes the property subject to this trust.' "

Much of what was said in *Houston Oil* was recognized in *Abrams v. Lakewood Park Cemetery Ass'n.*, 355 Mo. 313, 196 S.W.2d 278 (1946). In *Abrams* the court stated that "one of the accepted methods by which land may be 'set apart' as a cemetery is by dedication" and "the essence of dedication is intention, an intention to dedicate or set apart for cemetery purposes." 196 S.W.2d p. 283[4–6].

The court further stated at 196 S.W.2d p. 284 that it had been plainly indicated in *United Cemeteries v. Strother*, 342 Mo. 1155, 119 S.W.2d 762 (1938) "that as long as the property remained dedicated to cemetery purposes it could only be transferred, whether by power of sale or other conveyance, as and for a cemetery...." [1]

In this case there can be no doubt that the intention of Fanny Frazier was to dedicate the area which had been fenced and used as a cemetery for cemetery purposes. Indeed, Nicklas does not dispute that and freely acknowledged that he well knew of the existence of the cemetery and its precise location. While the court in *Abrams* was concerned with a public cemetery, the same principle as announced there was applied in *Houston Oil* to a private burial ground reserved in a deed. The result in *Houston Oil* is consistent with the majority of the cases which have considered this question. Annot., 139 A.L.R. 1339 (1942). This court believes *Houston Oil* was correctly decided and follows that holding

1. The question of ownership of the burial ground involved here is not presented and thus is not decided. The only question presented *and decided is the right of the heirs and rela-*tives of those persons buried in the private cemetery to restrain Nicklas as the owner of the surrounding ground from interfering with the uses to which the cemetery tract has been devoted. It is not necessary to decide the precise real estate interest which Nicklas obtained in the cemetery tract to decide the question presented on this appeal.

when the private cemetery is reserved in a deed.[2]

■ In *White v. Williams, supra,* the question presented was whether or not the relatives of those persons buried in the McCutcheon cemetery involved in *Houston Oil* had the right to enjoin drilling on the cemetery property. The court held that they did, and stated that once the land had been dedicated to cemetery purposes by deed, the relatives of those buried therein have a right to restrain anyone from interfering with the dedicated use of burial purposes. It follows that in this case the relatives of those buried in the cemetery reserved and dedicated by deed have a right to restrain Nicklas from interfering with the purpose for which the land had been dedicated and reserved.

The judgment is reversed and the court is directed to enter a judgment restraining the Nicklases from interfering with the cemetery purposes for which the tract was dedicated and used. The decree shall explicitly enjoin Nicklas from building a house in any part of the area which was fenced and which constitutes the cemetery. The evidence is insufficient for this court to grant the other relief prayed for, and for that reason this cause is remanded for further proceedings. The Rhodes shall be given the opportunity to present evidence as to the legal description of the fenced area dedicated and used for cemetery purposes so that the area the Nicklases are restrained from interfering with may be precisely described. The Rhodes may also present further evidence to enable the court to grant complete relief, including the description of a right of access from the public road to the cemetery which is implied to have been reserved to make the cemetery reservation meaningful. 25 Am.Jur.2d Easements and Licenses, § 34.

All concur.

2. "The simplest form of private burial ground resulted from the voluntary setting apart of a portion of one's land for the interment therein of members of one's own family. Such use is ordinarily perpetuated by the founder's will or, upon conveyance of the land, by reservation in the deed. This is a recognized method of creating a private family burial ground or cemetery." P. E. JACKSON, THE LAW OF CADAVERS, 220 (2d Ed. 1950).